J. I. MASON, DOING BUSINESS AS MASON & COMPANY, v. TOWN OF ANDREWS.

(Filed 9 June, 1926.)

1. **Contracts—Interpretation—Audits—Accountants—Mistakes and Inaccuracies—Damages.**

   Where there is a contract for the complete auditing of defendant's books, plaintiff to be paid per diem for work done, if there are mistakes and inaccuracies, such mistakes and inaccuracies are an element in the completeness and value of the audit, and the plaintiff is entitled under the contract to the amount per diem as agreed upon, less so much as it would take to reform the audit and make it accurate.

2. **Same—Instructions—Appeal and Error.**

   A charge on the foregoing contract that mistakes and inaccuracies in the audit be taken into consideration only as to the amount of time devoted to the work, and that such mistakes should not be considered upon the value of the audit, is reversible error.

APPEAL by defendant from *Walter S. Siler, Emergency Judge,* and a jury, at February Term, 1926, of CHEROKEE. New trial.

The plaintiff alleges that he was a duly licensed and certified public accountant engaged in business in the city of Asheville. The defendant is a municipal corporation, and through its duly authorized agent "employed the plaintiff to make a complete audit of the books of the town of Andrews, for and in behalf of said municipality, and it agreed that the plaintiff was to receive therefor compensation at the following rates: $25.00 per day and expenses for a certified accountant, and $20.00 per day for a junior accountant, seven hours to constitute a day. That the compensation so agreed upon was fixed and decided upon on 19 April, 1924, as a compromise rate after a misunderstanding between the plaintiff and defendant as to the rates to be charged therefor." That the audit per the agreement was duly made and the cost was $1,956.25.

Defendant admits the contract, but alleges, among other things, "That the plaintiff came to the town of Andrews about 1 April, 1924, and

began the work upon said books of the defendant, and remained there with an assistant, which plaintiff had brought with him, for six or seven days, when the plaintiff represented to the defendant and led the defendant to believe that said work was practically completed and finished, and all that remained to be done was the working out of some minor details, which plaintiff, as represented by him, could do just as well in the city of Asheville, and took the books and papers of the defendant to said city of Asheville, as represented by the plaintiff, to work out said minor details and complete said audit, representing and leading defendant to believe at the same time that said audit was practically completed. That the plaintiff kept said books in the city of Asheville for a period of about two months, or longer, before making any report of any kind to the defendant," etc.

Defendant further says and alleged that the plaintiff further breached his said contract with the defendant in that he failed and refused to carry on said audit in a regular and business-like way and manner, and charged for at least twice as much time as was necessary for a competent auditor or accountant to audit and make out his report upon its said books. . . . That as a result of the numerous errors and defects in the work the plaintiff in his said pretended report and audit of the books of the defendant, it will be and is necessary for the defendant to have its books re-audited at once.

On 12 December, 1924, the defendant wrote the plaintiff as follows: "A meeting was held last night by the board of aldermen of the town of Andrews, N. C., and the board is satisfied that your bill of $1,956.25, dated 21 June, 1924, for auditing the town records is absolutely unreasonable for the work performed, and the board refuses to authorize payment of that amount. Therefore your draft will not be honored. The board is anxious to get this matter adjusted upon a reasonable basis, and trust the same can be done in a manner satisfactory to all concerned in the very near future."

At the conclusion of the testimony, the court below instructed the jury that if they believed all the evidence and found the facts to be as testified, they should answer the first issue "No," and the issue was so answered, and the case then submitted to the jury upon the second issue. To this instruction the defendant in apt time excepted, assignment of error No. 17.

The court below charged the jury as follows: Exception and assignment of error No. 20: "The only matter that addresses itself to you is what sum is the plaintiff entitled to receive under the contract for the services rendered by him, and the court submits to you one issue: In what sum, if any, is the defendant indebted to the plaintiff? It is a matter, gentlemen, for you; it is purely and simply a question of fact

for you to find how much time, under the evidence, the burden being upon the plaintiff in the case, that they did put in, and allow pay for it at the rate of wages agreed upon in the contract. As I have stated before, you having nothing to do with their contract, but only passing upon the time that was consumed, the days and hours of labor that the plaintiff has expended in the performance of his contract. The court charges you that such mistakes or such inaccuracies as it may contain, if you find that it does contain such, would be considered by you as a circumstance, if you find that such inaccuracies and mistakes did occur, as to the amount of time that was devoted to the work, and not as to the value of the audit. That matter is not before you; it is not a question as to whether it was accurately done or whether it is complete or not; it has been contracted for and has been received by the defendants, and that question is not before you as to its value, or whether or not it has any value; you are only to find what the plaintiff is entitled to recover under his contract, and you will take into consideration the time necessary to do the work; you will take into consideration the item of expense while they were engaged in the work at Andrews, and the transportation from Asheville to Andrews."

The issues submittted to the jury and their answers thereto, were as follows:

"1. Did the plaintiff breach the contract as alleged in the answer? Answer: No.

"2. In what sum, if any, is the defendant indebted to the plaintiff? Answer: $1,850.00."

The other assignments of error we do not think necessary to consider.

*D. Witherspoon and D. H. Tillett for plaintiff.*
*Moody & Moody for defendant.*

CLARKSON, J. It may be noted that no time is specified in the contract when the work should be completed. To be sure the contract was to make a complete audit of the books of the town, but this must be done within a reasonable time. If this was not so, where no time is mentioned, a party who is employed to do certain work, may take an unlimited time—such is not the law.

13 C. J., p. 685, sec. 782, says: "The question as to what is a reasonable time for the performance of a contract, fixing no time for performance, depends on the nature of the contract and the particular circumstances. In deciding whether an undertaking has been performed within a reasonable time, the material difficulties and hazards attending it, the amount of diligence used, and frustrated attempts at performance should be considered. Perhaps as accurate a definition of reasonable

time as may be given is that it is such time as is necessary conveniently to do what the contract requires should be done." *Holden v. Royall,* 169 N. C., 678; *Lambeth v. Thomasville,* 179 N. C., 456; *May v. Menzies,* 186 N. C., 149; *Colt v. Kimball,* 190 N. C., 173; *Cowles v. Hagerman* (New Mexico), 110 Pac. Rep., 843.

It is admitted that the contract between the parties was to make a complete audit of the books of the town. The defendant alleges that the charge was at least twice as much as was necessary; that as a result of the numerous errors and defects of the pretended report and audit it will be necessary for defendant to have the books re-audited. Defendant, in its letter to plaintiff stated that it was anxious to get the matter adjusted on a reasonable basis. Defendant did not deny that plaintiff was entitled to some pay for the audit, nor was the audit rejected in the entirety.

We think that there was sufficient evidence to be submitted to the jury that the audit was not complete on account of mistakes and inaccuracies. The court below on this aspect charged the jury that if they should find such inaccuracies and mistakes did occur this would be considered as a circumstance as to the amount of time that was devoted to the work and not as to the value of the audit. We cannot so hold. The charge is not altogether clear, but it would indicate that it would make the town pay for the time plaintiff took in making the mistakes and inaccuracies in the audit. But we think, under the facts and circumstances of this case, the mistakes and inaccuracies, if there were any, go to the value of the audit. The contract was to make a complete audit—the time taken defendant claimed was unreasonable. Defendant received the audit, but objected to the time taken and mistakes and inaccuracies. If there were mistakes and inaccuracies, as the evidence tended to show, plaintiff would be entitled, under the contract, to the amount per diem as agreed upon for a reasonable time in making the audit less so much as it would take to reform the audit and make a complete audit, in accordance with the contract.

The principle here is well stated in *McCormick v. Ketchum,* 48 Wis., p. 646, where the following charge is sustained: "If the plaintiff's services were worthless, or of no value, he is not entitled to recover anything, but if they are of value, he is entitled to recover that value."

This matter has been discussed recently by *Varser, J.,* in *Moss v. Knitting Mills,* 190 N. C., p. 648. It is there said: "The reasonable cost of the labor to remedy any defects for which plaintiff was responsible, was the correct rule under the instant case." *Howie v. Rea,* 70 N. C., 559.

For the reasons given, there must be a

New trial.