DₑROSSETT v. DUKE ENERGY CAROLINAS, LLC

[206 N.C. App. 647 (2010)]

JULIE A. DeROSSETT, ᴀɴᴅ RICHARD A. SUTTON, Pʟᴀɪɴᴛɪꜰꜰꜱ-Aᴘᴘᴇʟʟᴀɴᴛꜱ ᴠ. DUKE ENERGY CAROLINAS, LLC, JAMES HOLLIFIELD, LARRY JENKINS, ᴀɴᴅ ASSUR-ANCE PLUS, INC., Dᴇꜰᴇɴᴅᴀɴᴛꜱ-Aᴘᴘᴇʟʟᴇᴇꜱ

No. COA09-820

(Filed 7 September 2010)

## 1. Easements— secondary easement—consent judgment

The trial court did not err by concluding as a matter of law that Duke Energy owned a secondary easement across plaintiffs' property for the purpose of providing access to a utility easement. The literal language of a consent judgment created a secondary easement of the type found to exist by the trial court.

## 2. Easements— secondary easement—consent judgment;—no ambiguity

The trial court did not err by concluding that no genuine issue of material fact existed concerning the extent to which a consent judgment created a secondary easement allowing Duke Energy to cross portions of plaintiff Freeman's property. The language of the consent judgment unambiguously referred to both an express primary easement encumbering the described strip of land and a secondary easement granting a right of ingress and egress to the property subject to the primary easement.

## 3. Easements— secondary easement—consent judgment—no ambiguity

The trial court correctly concluded that a consent judgment authorized Duke Energy to cross plaintiffs' property outside of the strip of land described in the primary easement in order to effectuate the purposes sought to be achieved by the consent judgment. The secondary easement created by the consent judgment was not patently ambiguous.

## 4. Parties— joinder—necessary parties—no error

The trial court did not err by denying plaintiffs' motion for reconsideration in an easement case. The trial court did not fail to require defendant to join all necessary and proper parties to the action because there were no other parties directly affected by the trial court's decision.

Appeal by plaintiffs from order entered 11 February 2009 by Judge James U. Downs. Heard in the Court of Appeals 19 November 2009.

> *McKinney & Tallent, P.A., by Eric W. Stiles, for Plaintiff-Appellants.*

> *Coward, Hicks & Siler, P.A., by William H. Coward, for Defendant-Appellees.*

ERVIN, Judge.

Plaintiffs Julie A. DeRossett and Richard A. Sutton appeal from the trial court's order granting partial summary judgment in favor of Defendant Duke Energy Carolinas, LLC. After a careful review of Plaintiffs' challenges to the trial court's order in light of the record and the applicable law, we conclude that the trial court's order should be affirmed.

## I. Factual Background

### A. Substantive Facts

In 1942, Duke Energy's predecessor, Nantahala Power and Light Company, initiated condemnation proceedings against Margaret Jordan and Dixie Freeman for the purpose of obtaining an easement authorizing the construction and operation of an electric transmission line across a tract of property in which they owned interests located in Graham County, North Carolina.[1] At the conclusion of the condemnation proceeding, the parties entered into a consent judgment which granted an easement across the property of Ms. Jordan and Ms. Freeman to Nantahala.[2] During the pendency of the condemnation

---

1. According to the information contained in the record, Ms. Freeman owned the property in question subject to a retained life estate in favor of Ms. Jordan. For that reason, we will refer to the tract of property as Ms. Freeman's property throughout the remainder of this opinion.

2. The consent judgment was initially hand-written, certified by the Clerk of the Graham County Superior Court, and filed in Judgment Book H, Page 181. Subsequently, a typewritten version of the consent judgment was recorded at Book 45, Page 28 in the Graham County Register of Deeds office. The typewritten judgment is identical to the handwritten judgment, except that the former lacks the phrase "as described in the petition" immediately after the words "together with the rights of ingress and egress." Although Plaintiff contends that the trial court relied upon the typewritten rather than the handwritten version of the consent judgment in granting partial summary judgment in favor of Duke Energy, the parties appear to agree that the handwritten version of the consent judgment is the one upon which we should rely in deciding the issues that Plaintiffs have brought forward on appeal.

DeROSSETT v. DUKE ENERGY CAROLINAS, LLC

[206 N.C. App. 647 (2010)]

proceeding, Nantahala constructed the proposed transmission line across Ms. Freeman's property. Nantahala merged into Duke Energy Corporation in 1998, with the properties that had formerly been part of the Nantahala system coming under the ownership of Duke Energy Carolinas, LLC, in 2006 as part of a further corporate reorganization. Duke Energy Carolinas continues to operate the transmission line located on Ms. Freeman's property.

Since 1942, the property formerly held by Ms. Jordan and Ms. Freeman has been divided among multiple owners because of inheritance or sale to third parties. Plaintiffs own a small section of the property previously owned by Ms. Freeman. However, the tract of property specifically delineated in the condemnation petition does not include any of Plaintiffs' property. The remainder of Ms. Freeman's property, including the tract specifically described in the consent judgment, is owned by individuals who are not parties to this case. However, in order to access the right-of-way granted in the consent judgment for the purpose of maintaining the transmission line without traveling the length of the described easement, Duke Energy believes that it is entitled to cross property owned by Plaintiffs or others.

In 2006, Plaintiff Richard A. Sutton granted permission to James Hollifield and Larry Jenkins, who were acting as agents for Duke Energy, to use Plaintiffs' property to access the right-of-way granted in the consent judgment. Duke Energy's agents had already made an unsuccessful attempt to gain access to the right-of-way from individuals holding title to other portions of Ms. Freeman's property. After Defendant's agents entered Plaintiffs' property, altered a roadway, and destroyed a bridge leading to a residence located on Plaintiffs' property, Plaintiff Sutton revoked the permission to enter on to his property that he had previously granted to Duke Energy's agents.

### B. Procedural Background

On 24 October 2006, Plaintiffs filed a complaint in Graham County District Court seeking to quiet title to their property and alleging that Duke Energy's agents had trespassed upon their property On 28 December 2006, Defendants filed a Motion to Dismiss. On 5 March 2007, Defendants filed an Answer; Counterclaims; and Motion for Preliminary and Permanent Injunction. On 10 May 2007, Plaintiffs filed a Reply to Defendants' Counterclaims.

On 4 April 2008, an order was issued transferring the case from the District Court to the Superior Court. Defendants filed a Motion for Summary Judgment and an affidavit by Sue C. Harrington on 22 July 2008. In response, Plaintiffs filed the affidavits of Ms. DeRossett and Mr. Sutton on 30 July 2008. Defendants' summary judgment motion was heard at the 2 February 2009 session of Macon County Superior Court.

On 9 February 2009, the trial court signed an order that was subsequently filed on 11 February 2009 granting Duke Energy's motion for partial summary judgment. In its order, the trial court declared that Duke Energy was "the owner of a secondary easement and right of way as set forth in the" consent judgment; found and determined "that said Judgment is not ambiguous;" construed the consent judgment, "as a matter of law, to include the right of [Duke Energy] and its agents to go over and across Plaintiffs' lands outside of the right of way strip described in said Judgment, for any and all purposes related to facilities within said right of way strip;" and found "that the reasonableness of the construction of the new bridge and the location of the access right of way on Plaintiffs' property is a jury question not resolved by this order." The trial court also certified its order for immediate appellate review pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b).

On 13 February 2009, Plaintiffs filed a Motion for Reconsideration in which they alleged that the trial court had entered partial summary judgment in favor of Duke Energy without joining all necessary parties in violation of N.C. Gen. Stat. § 1A-1, Rule 19. The trial court denied Plaintiffs' reconsideration motion by means of an order that was signed on 25 March 2009 and filed on 1 April 2009. On 7 April 2009, Plaintiffs noted an appeal to this Court from the trial court's order.

## II. Legal Analysis

### A. Standard of Review

This Court reviews orders granting partial summary judgment on a *de novo* basis. *Sturgill v. Ashe Mem'l Hosp., Inc.*, 186 N.C. App. 624, 626, 652 S.E.2d 302, 304 (2007), *disc. rev. denied*, 362 N.C. 180, 658 S.E.2d 662 (2008). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c).

DeROSSETT v. DUKE ENERGY CAROLINAS, LLC

[206 N.C. App. 647 (2010)]

[Defendants] may show entitlement to summary judgment by (1) proving that an essential element of [Plaintiffs'] case is non-existent, or (2) showing through discovery that [Plaintiffs] cannot produce evidence to support an essential element of [their] claim, or (3) showing that [Plaintiffs] cannot surmount an affirmative defense . . . . Once the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that [Plaintiffs] can at least establish a prima facie case at trial.

*Draughon v. Harnett County Bd. of Educ.*, 158 N.C. App. 208, 212, 580 S.E.2d 732, 735 (2003) (internal citations and quotations omitted), *aff'd*, 358 N.C. 131, 591 S.E.2d 521 (2004). During consideration of a summary judgment motion, "the evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Duke Energy Corp. v. Malcolm*, 178 N.C. App. 62, 64-65, 630 S.E.2d 693, 695, *aff'd per curiam*, 361 N.C. 111, 637 S.E.2d 538 (2006) (quoting *Bruce-Terminix Co. v. Zurich Insur. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998).

### B. Analysis

On appeal, Plaintiffs advance a series of challenges to the trial court's order. Among other things, Plaintiffs contend that the trial court erred by determining that, as a matter of law, Duke Energy was the owner of a secondary easement[3] applicable to their property under the consent judgment; that the consent judgment was not ambiguous, so that there was no need for additional factfinding by a jury; that the consent judgment sufficiently described the secondary easement, so that it was not patently ambiguous and unenforceable; and that the other owners of the property formerly owned by Ms. Freeman were necessary parties whose participation was required by N.C. Gen. Stat. § 1A-1, Rule 19, as a precondition for the entry of a valid judgment.[4] We disagree.

---

3. Duke Energy contends that the term "secondary easement" is inapt and that the interest in question "is most accurately viewed not as a separate interest, but rather, 'a natural incident to the easement itself.'" (quoting 3-1 Nichols on Eminent Domain § 11.08). However, for ease of reading, we will use the term "secondary easement" to describe the disputed interest in the remainder of this opinion.

4. Plaintiffs also argue that the original Nantahala condemnation petition did not support the creation of a secondary easement of the type found to exist in the trial court's order because the condemnation petition did not adequately describe that secondary easement. However, the statutory provisions governing the contents of con-

DeROSSETT v. DUKE ENERGY CAROLINAS, LLC

[206 N.C. App. 647 (2010)]

## 1. Construction of the Consent Judgment

[1] Initially, Plaintiffs argue that the trial court erred by concluding as a matter of law that Duke Energy owned a secondary easement granting ingress and egress to the primary easement based upon the language of the consent judgment. Stated simply, Plaintiffs contend that the plain language of the consent judgment does not grant a secondary easement or other right-of-way across Plaintiffs' property for the purpose of providing access to the utility easement. A careful review of the literal language of the consent judgment demonstrates that it does, contrary to Plaintiffs' argument, create a secondary easement of the type found to exist by the trial court.

At the time that the parties entered into the consent judgment, Plaintiffs' land was owned by Ms. Freeman, subject to a life estate reserved in favor of Ms. Jordan. Nantahala filed a condemnation petition for the purpose of obtaining an easement across the property in order to permit the construction and maintenance of a transmission line across Ms. Freeman's property. According to the condemnation petition, Nantahala sought "to acquire a right of way" and "[an] easement set forth and described in the petition" as "225 feet in width, and 692 feet in length, and extending 125 feet on the Southwest side and 100 feet on the Northeast side of the center line of the . . . transmission line as now located and established . . . on said property." According to the consent judgment entered for the purpose of resolving the condemnation proceeding, Nantahala was,

> adjudged to be the owner of an *easement* over and upon the lands of the respondents or *together with the rights of ingress and egress* described in the petition, and which easement is more particularly described as follows: *An easement or right of way*

demnation petitions in effect at the time of the condemnation proceeding at issue in this case merely required the petition to "contain a description of the real estate which the corporation seeks to acquire." N.C. Gen. Stat. § 33-1716 (1939). Since Nantahala was only attempting to acquire the land on which the transmission line was to be located, the condemnation petition appears to have complied with the relevant statutory provision. In addition, any deficiency in Nantahala's petition should have been brought to the attention of the court at the time that the condemnation proceeding was in litigation. By entering into the consent judgment, Ms. Jordan and Ms. Freeman waived any right to challenge the adequacy of Nantahala's petition. *King v. Taylor*, 188 N.C. 450, 452, 124 S.E.2d 751, 751 (1924) (stating that a consent judgment "is in effect an admission by the parties that the decree is a just determination of their rights on the real facts of the case" and may not be "amended nor in any way waived without a like consent, nor can it be appealed from or reviewed on a writ of error"). Thus, Plaintiffs are not entitled to relief from the trial court's order on the basis of any alleged deficiency in the original condemnation petition.

225 feet in width and 692 feet in length, extending 125 feet on the southwest side and 100 feet on the northeast side of the line of the power or transmission line as now located and established by the petitioner on said property, said right of way and easement to be used for the purpose of erecting a power line and telephone line and for the purpose of constructing, maintaining and repairing said power lines, equipment and instrumentalities, which may be reasonably necessary for the transmission of electrical current and electrical energy and telephone communications, and for any and all purposes authorized by law.

(emphasis added) Many years after the entry of the consent judgment, Duke Energy acquired Nantahala's rights under the easement and Ms. Freeman's property passed into the hands of multiple persons, including Plaintiffs, so that the easement which crossed property under common ownership in 1942 crossed property owned by a number of different people in 2006.

"Consent judgments delineating easement rights are foremost contracts." *Malcolm*, 178 N.C. App. at 65, 630 S.E.2d at 695 (citing *Hemric v. Groce*, 154 N.C. App. 393, 397, 572 S.E.2d 254, 257 (2002)). In interpreting contracts:

[T]he goal of construction is to arrive at the intent of the parties when the [contract] was [written]. Where a [contract] defines a term, that definition is to be used. If no definition is given, non-technical words are to be given their meaning in ordinary speech, unless the context clearly indicates another meaning was intended. The various terms of the [contract] are to be harmoniously construed, and if possible, every word and every provision is to be given effect.... [I]f the meaning of the [contract] is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein.

*Malcolm*, 178 N.C. App. at 65, 630 S.E.2d at 695 (2006) (quoting *Gaston County Dyeing Machine Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299-300, 524 S.E.2d 558, 563 (2000) (quotation marks and citation omitted)). A careful examination of the language of the consent judgment leads us to the conclusion that the only reasonable interpretation of the relevant contractual language is that it does, in fact, create a secondary easement authorizing Duke Energy to access

the transmission line across Ms. Freeman's property, including the land presently owned by Plaintiffs, for the purpose of repairing and maintaining that facility.

According to the consent judgment, the easement across Ms. Freeman's property was created for the purpose of allowing Nantahala to construct, maintain, or repair power lines on the property in question. However, "[t]he mere right-of-way for an electric transmission line would be of little value without the right to maintain and protect the line." *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 720-21, 127 S.E.2d 539, 542 (1962). Thus, the provisions of the consent judgment were undoubtedly intended to allow Nantahala to take reasonable actions to maintain and repair, as well as construct, the transmission line that crosses Ms. Freeman's property. Any other understanding of the provisions of the consent judgment would ignore the immense practical problems that would result from any attempt to limit Duke Energy's ability to cross Plaintiffs' property for the purpose of repairing and maintaining the transmission line in question[5] and deprive the references in the consent judgment to Nantahala's right to repair and maintain the transmission line, not to mention the right of ingress and egress granted in the consent judgment, of any practical meaning.

The literal language of the consent judgment makes explicit reference to granting Nantahala rights in the tract of property on which the transmission line was constructed "together with the rights of ingress and egress." In light of that language, we conclude that the trial court correctly determined that the consent judgment created two separate easements. First, the consent judgment expressly granted "[a]n easement or right of way 225 feet in width and 692 feet in length, extending 125 feet on the southwest side and 100 feet on the northeast side of the line of the power or transmission line[,]" in which the transmission line was to be located. Secondly, by granting "the rights of ingress and egress described in the petition," the easement set out in the consent judgment expressly authorized Nantahala to cross that portion of Ms. Freeman's property located outside the limits of the primary easement for appropriate purposes. The separate and distinct nature of "the rights of ingress and egress"

---

5. For example, limiting Duke Energy to accessing the transmission facilities by means of the property specifically delineated in the consent judgment could substantially increase the time and difficulty involved in repairing or maintaining the transmission line.

DeROSSETT v. DUKE ENERGY CAROLINAS, LLC

[206 N.C. App. 647 (2010)]

specified in the consent judgment is confirmed by the use of the words "together with," which clearly imply the grant of a right in the property owned by Ms. Freeman other than the right to occupy the strip of land on which the transmission line was to be built. The separate right of ingress and egress granted in the consent judgment allows Nantahala and its successors to construct, repair and maintain the transmission lines located on the land encumbered with the primary easement by entering upon other portions of Ms. Freeman's property to the extent necessary to obtain access to the property subject to the primary easement.[6]

In seeking to persuade us to reach a different result, Plaintiffs contend that the language of the consent judgment to the effect that Nantahala had received "an easement over and upon [Ms. Freeman's property] together with the rights of ingress and egress *described in the petition*" coupled with the absence of a separate description of any secondary easement in the original condemnation petition indicate that the consent judgment did not create a secondary easement (emphasis added). However, given that it was not necessary for the condemnation petition at issue here to contain a description of any property except the real estate that the utility sought to acquire, N.C. Gen. Stat. § 33-1716 (1939) (providing that a condemnation petition filed by a private condemnor must "contain a description of the real estate which the corporation seeks to acquire"), and given that the references to property "described in the petition" clearly refer to the primary rather than the secondary easement, we do not find this argument persuasive.[7] In addition, Plaintiffs emphasize the fact that the words "easement" and "right of way" as they appear in the easement are couched in the singular, rather than the plural. However, we are not convinced by this argument either, given that the

6. In addition to its reliance upon the language of the consent judgment, Duke Energy contends that it has an equivalent right of ingress and egress implied in law. *See City of Statesville v. Bowles*, 6 N.C. App. 124, 130, 169 S.E.2d 467, 471 (1969) (stating that "[n]ecessarily included [in a sewer easement] would be the right to go on the property whenever necessary to inspect, repair or replace the sewer line"). However, we need not reach this issue given our holding with respect to the construction of the consent judgment.

7. Although the specific language upon which Plaintiffs focus is somewhat awkward, we are still persuaded that, in context, the reference to the interest "described in the petition" is the "easement over and upon" Ms. Freeman's land and that the reference to "the right of ingress" is not modified by "described in the petition." In the event that we were to accept the reading advocated by Plaintiffs, we would have effectively eliminated any separate meaning for the reference to a "right of ingress," an action which would violate the relevant canons of construction.

language of the consent judgment uses "easement" and "right of way" in a context that clearly does not include Nantahala's right of ingress and egress. Finally, Plaintiffs point to the absence of a specific delineation of the location of the secondary easement as an additional ground for rejecting the trial court's construction of the consent judgment. However, since the language of the consent judgment clearly provides a right of ingress and egress for the purpose of accessing the property on which the transmission line is located and since that right cannot be meaningfully exercised through a single or limited number of previously-delineated points of ingress, we find this argument unpersuasive as well. Thus, we conclude that the trial court correctly concluded that Defendant owned a secondary easement under the consent judgment in addition to a primary easement.[8]

## 2. Ambiguity

[2] Secondly, Plaintiffs contend that the consent judgment is ambiguous and that the trial court erred by concluding that no genuine issue of material fact requiring the intervention of a jury existed concerning the extent to which the consent judgment created a secondary easement allowing Duke Energy to cross portions of Ms. Freeman's property other than the strip occupied by the transmission line. Once again, we disagree. .

The extent to which a consent judgment is ambiguous is a question of law. *Malcolm*, 178 N.C. App. at 65, 630 S.E.2d at 695 (quoting *Bicket v. McLean Securities, Inc.*, 124 N.C. App. 548, 553, 478 S.E.2d 518, 521 (1996)). An ambiguity exists in the event that the relevant contractual language is fairly and reasonably susceptible to multiple constructions. *Id.* (quoting *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993)). According to Plaintiffs, the fact that the language of the consent judgment uses the words a "right of way" and an "easement" to refer to the rights granted to Nantahala and the fact that the consent judgment is couched in the singular suggests that the consent judgment only created a single easement. In addition, Plaintiffs argue that the phrase "together with" is equivalent to the word "include," so that the rights

---

8. Although Plaintiffs place considerable reliance upon the holding in *Malcolm*, 178 N.C. App. at 62, 630 S.E.2d at 693, we read that decision to address the extent to which the owner of the servient estate was entitled to engage in certain activities rather than the extent of the utility's right of ingress. Thus, aside from the general principles of law enunciated in the Court's opinion in *Malcolm*, we do not believe that our decision in that case has any significant bearing on the result which should be reached here.

of ingress and egress granted in the consent judgment are included within the easement on which the transmission line has been constructed. As a result, Plaintiffs contend that, because they are able to derive a reasonable alternative construction of the consent judgment derived from the language of that instrument, "the contract language is fairly and reasonably susceptible to multiple constructions." *Id.* We do not find Plaintiff's argument persuasive.

" 'Whenever a court is called upon to interpret a contract[,] its primary purpose is to ascertain the intention of the parties at the moment of its execution.' " *Gilmore v. Garner*, 157 N.C. App. 664, 666, 580 S.E.2d 15, 18 (2003) (quoting *Lane v. Scarborough*, 284 N.C. 407, 409-10, 200 S.E.2d 622, 624 (1973)).

> Intention or meaning in a contract may be manifested or conveyed either expressly or impliedly, and it is fundamental that that which is plainly or necessarily implied in the language of a contract is as much a part of it as that which is expressed.

*Gilmore* at 667, 580 S.E.2d at 18 (quoting *Lane* at 410-11, 200 S.E.2d at 625).

> According to the consent judgment, Nantahala was

> adjudged to be the owner of an easement over and upon the lands of the respondents *together with the rights of ingress and egress described in the petition*, and which easement is more particularly described as follows . . . .

All parties agree that the language of the consent judgment clearly and unambiguously granted Nantahala an easement authorizing it to build and maintain electric transmission lines on the strip of land "more particularly described" at a later point in the document. However, given that the contractual language refers to a separate right of ingress and egress, we have concluded that the consent judgment creates both a primary easement in which the transmission line could be constructed and operated and a secondary right of access to the primary easement. In other words, for the reasons set forth above, we believe that the language of the consent judgment unambiguously refers to both an express primary easement encumbering the described strip of land and a secondary easement granting a right of ingress and egress to the property subject to the primary easement. As we have already noted, the fact that the consent judgment uses "easement" and "right of way" in the singular does not cast any doubt on this conclusion since the references to the "ease-

ment" or "right of way" upon which Plaintiffs rely in advancing this argument clearly refer exclusively to the primary easement. Moreover, taken in context, we believe that the expression "together with" as used in the consent judgment clearly means "in addition to" rather than "including." *See Williams v. Best*, 195 N.C. 324, 326, 142 S.E.2d 2, 3 (1928) (stating that "[t]he personal property is bequeathed 'together with' the rents and use of the real estate–i.e., along with, or in union or combination with the latter," so that "[t]he expression is copulative connecting the two gifts"). Thus, because the consent judgment clearly and unambiguously granted two separate and distinct easements, one primary and one secondary, to Nantahala and because we do not find Plaintiffs' attempts to establish the existence of an ambiguity in the relevant contractual language persuasive, we conclude that the trial court correctly determined that the consent judgment was without ambiguity.

### 3. Failure to Define the Scope of the Right of Ingress

[3] Thirdly, Plaintiffs contend that, because the consent judgment did not expressly define the location at which Duke Energy's right of ingress and egress should be exercised, any secondary easement created by the consent judgment is patently ambiguous, thereby rendering the secondary easement void. *King v. King*, 146 N.C. App. 442, 445, 552 S.E.2d 262, 264-65 (2001) (stating that, "[i]f the description of an easement is 'in a state of absolute uncertainty, and refer[s] to nothing extrinsic by which it might possibly be identified with certainty,' the agreement is patently ambiguous and thereby unenforceable") (quoting *Lane v. Coe*, 262 N.C. 8, 13, 136 S.E.2d 269, 273 (1964)). We disagree.

As we have previously discussed, the consent judgment expressly stated that the primary easement was intended to allow Nantahala to work within and to construct, maintain, or repair power lines on the property encumbered by the primary easement. However, as we have also previously noted, "[t]he mere right-of-way for an electric transmission line would be of little value without the right to maintain and protect the line," *Weyerhaeuser Co.* at 720-21, 127 S.E.2d at 542, making the inclusion of language granting a separate right of access to the primary easement necessary and appropriate. The right of ingress and egress expressly mentioned in the consent judgment granted Nantahala access to the transmission line in order to "maintain and protect" it. As we read the language of the consent judgment, Ms. Freeman and Ms. Jordan clearly and unambiguously intended to

allow Nantahala to cross their property in order to reach the strip of land encumbered by the primary easement. Had either of them intended to limit the point at which Nantahala could enter and exit their property for the purposes specified in the consent judgment to one or more designated locations, they had the opportunity to delineate those locations in that document. Given the manner in which transmission lines must be maintained and operated, it would have been difficult, if not impossible, to clearly and precisely define the location or locations at which Nantahala would have been entitled to exercise its right of ingress and egress. Instead, in light of the fact that a problem can develop with a transmission line at any number of locations, it would be much more consistent with the purpose of the secondary easement to leave the exact points at which the right of ingress and egress could be exercised undefined. As a result, we conclude that the fact that Ms. Freeman and Ms. Jordan elected not to specify the location or locations at which Nantahala could exercise its right of ingress and egress for the purpose of repairing and maintaining the transmission line demonstrates that they authorized Nantahala to cross their property at any point outside of the strip of land encumbered by the primary easement as reasonably needed to effectuate the purposes set out in the consent judgment, so that the language of the consent judgment does not contain a patent ambiguity sufficient to render the relevant provision of the consent judgment unenforceable. Thus, the trial court correctly concluded that the consent judgment authorized Duke Energy to cross Plaintiffs' property outside of the strip of land described in the primary easement in order to effectuate the purposes sought to be achieved by the consent judgment.

### 4. Failure to Join Necessary Parties

[4] Finally, Plaintiffs argue that the trial court erred by denying Plaintiffs' reconsideration motion, which was predicated on a contention that the trial court erred by failing to require Defendant to join all necessary and proper parties to this action in accordance with N.C. Gen. Stat. § 1A-1, Rule 19. We are unable to agree with Plaintiffs' contention.

N.C. Gen. Stat. § 1A-1, Rule 19(a) provides that:

Subject to the provisions of [N.C. Gen. Stat. § 1A-1,] Rule 23, those who are united in interest must be joined as plaintiffs or defendants; but if the consent of anyone who should have been joined as plaintiff cannot be obtained he may be made a defend-

ant, the reason therefor being stated in the complaint; provided, however, in all cases of joint contracts, a claim may be asserted against all or any number of the persons making such contracts.

" 'The term "necessary parties" embraces all persons who have or claim material interests in the subject matter of a controversy, which interests will be directly affected by an adjudication of the controversy.' " *Durham County v. Graham*, 191 N.C. App. 600, 603, 663 S.E.2d 467, 469 (2008) (quoting *Wall v. Sneed*, 13 N.C. App. 719, 724, 187 S.E.2d 454, 457 (1972) (emphasis added) (citation omitted in the original). According to well-established North Carolina law, "[n]ecessary parties *must* be joined in an action. Proper parties *may* be joined. Whether proper parties will be ordered joined rests within the sound discretion of the trial court." *Booker v. Everhart*, 294 N.C. 146, 156, 240 S.E.2d 360, 365 (1978) (emphasis added) (citing *Strickland v. Hughes*, 273 N.C. 481, 160 S.E.2d 313 (1968)).

In light of the definition of a "necessary party" set out above, we conclude that the owners of other tracts that were part of Ms. Freeman's property in 1942 were not necessary parties required to be joined in this case. The decision reached by the trial court merely addresses the extent to which Duke Energy has a right to cross Plaintiffs' property and makes no attempt to determine the extent to which other persons who owned a portion of the tract that Ms. Freeman owned at the time the consent judgment was entered into are subject to the same primary and secondary easements as Plaintiffs. In the event that a controversy arises between Duke Energy and the owners of other portions of Ms. Freeman's property, both parties will be entitled to litigate that dispute at that time. As a result, since N.C. Gen. Stat. § 1A-1, Rule 19(a), only requires the joinder of necessary parties and because the other persons owning interests in Ms. Freeman's property are not directly affected by the trial court's decision, we hold that the trial court did not commit reversible error by denying Plaintiffs' motion for reconsideration, or by not requiring Defendant to join all proper parties to the action.

## III. Conclusion

Thus, for the reasons set forth above, we conclude that all of Plaintiffs' challenges to the trial court's decision to grant partial summary judgment in favor of Defendants lack merit. For that reason, we affirm the trial court's order.

AFFIRMED.

Judges STROUD and ROBERT N. HUNTER, JR. concur.